Good morning, Your Honors. May it please the Court, Robert Rizzotti for Appellant William Barnett. This is an ERISA long-term disability benefits claim. I wish to talk about three points and I wish to reserve one minute for rebuttal. Basically, the threshold issue in this case based on the Court's inquiry is, is there any evidence of the zone in which Mr. Barnett or the other jobs exist? And there isn't. There is simply no substantial evidence to support the vocational determination by the plan. You already said substantial evidence. Does there have to be substantial evidence or evidence? There has to be substantial evidence and there is no evidence. So there is, by definition, no substantial evidence. All right. Second I mean, your argument is there's no evidence. There's no evidence. In the supplemental submission, I think there was some indication of evidence in the language of the letters where it talks about the location that he's now at and they've spoken with that location and that location can accommodate a job. They contacted the location four times and there was no response. They then concocted a lie to say that the location responded. The reality is the decision, the language in the letter is like any other quasi-judicial determination. They quote the standard, which is the plan, and they say we've met the standard. But analytically, like any other quasi-judicial determination, you have to show that it is an evidentiary basis for that determination. In order to show an evidentiary basis for that determination, you have to know where Barnett worked. We know he worked in San Onofre. We don't know what zone it was in. You have to show We don't know what zone it's in. We know where it is. But we don't know what their zones are. They have three zones that he has to work in. And we don't know the lines for those zones. We don't know what zone is San Onofre in. Where is San Onofre? It's on the coast in San Diego. Right. And so we don't know that that's in the zone? We don't know what zone it's in for Southern California Edison. The plan says we have three zones, coastal, northwestern, whatever they are. There's three zones. You have to go back to work in the zone you used to work in. They identified two jobs. One of the jobs was a customer service person who they say works in a call center. They don't tell you where the call centers are. They're not in San Onofre. But if they said that there was a call center in the zone that was in the zone where San Onofre is, they'd have covered that. But there's no evidence where the call centers are. From my knowledge, and it's not in the record, the call centers are in the Inland Empire. They're in San Bernardino. They're in Riverside. They're 100 miles away from San Onofre. Likely, but there's nothing in the evidence, likely they're not in the zone. The other job they said was telephone operator. They don't say where that zone is. Likely, there are no such jobs being used in Southern California Edison in the last 20 years because there's technology. But we know that they contacted the supervisor that formerly supervised Barnett. They contacted him four times. He never responded. From that, they concluded they could accommodate Barnett where he formerly worked. How is a non-response evidence that the man can be accommodated? The answer is it isn't. The burden, not the burden, but the reality is there's an absence of evidence. I thought the 2010 appeals denial letter specifically noted that it was confirmed that his work restrictions could be accommodated at San Onofre. It says that, but there's no evidence in the record that shows that. The evidence in the record is to the contrary. The evidence in the record shows that on four occasions they contacted the supervisor and four times he did not respond. The evidence in the record shows that in response to that, the supervisors at Southern California Evidence said, yes, we can use the statement that the job would be accommodated. There is just no position available as this means he does not meet the plan definition of LTD, which does not include the job being available. In other words, they decided to say the job could be accommodated when there's no evidence that the supervisor said it could be accommodated. If the supervisor had responded and said, yes, I can accommodate, that would be reasonable evidence to support their conclusion. When the supervisor didn't respond four times, that can't be evidence that he could be accommodated. He never said yes, he never said no, we never responded. So they keep talking about is the company, the defendant, right? Yes, the plan. So if the defendant says we can accommodate him at this location, I don't understand why you say that's not evidence, that's the company's promise, so to speak. That it can and will accommodate him there. But the decision went on to say the letter doesn't have to mention anything about the job availability, but maybe modify it a bit not to say he is expected to report back to work right away. They say, don't tell him to come back to work because there's no job. They obviously mean that there's no way to accommodate his disabilities. And again, logically you'd have, since they emailed the supervisor four times, they're jumping to the conclusion without any evidentiary basis. Because if they had a factual basis for it, they would have, the supervisor would have responded. What do you see in the plan itself that requires SCE in this case to provide the specifics that you say? In other words, they say we can accommodate him, you say well, they don't indicate how they're going to accommodate him and therefore that doesn't qualify. So I'm asking you, where in the plan are they obligated to provide that underpinning? The plan doesn't say that. Is it, where is the requirement in law generally that they do that? The basic concept is comparable to the concept this court set forth in Montour for medical evidence. There has to be a rational basis for the decision. You have to be able to identify the facts that support the findings and the findings support the decision. They're acting in a quasi-judicial capacity. If a Social Security judge said, here are the standards for Social Security, I say they're met and there's no evidence to support that, you would throw it out. What level of deference do we owe to their conclusions? You owe deference to their conclusions if they're reasonable. If there's no evidence to support them, they're not reasonable. And here, there's no evidence to support them because we don't have any evidence whatsoever of the zones in which Barnett should have worked. I'd also like to address my second issue, which is the Social Security determination. First and foremost, this Court has held repeatedly that it's critical evidence to consider and it's an abuse of discretion not to do so. The Edison plan did not address the Social Security determination in either of its denial letters. That was an abuse of discretion on its face. Sotomayor, you're saying that there's nothing in the record that shows it was even considered? There's nothing in the record that shows it was considered. Their argument is that two of the seven doctors who evaluated Barnett's records mentioned the Social Security award. The burden that this Court has established in Montour and in Salome is that they have to address why there's a different conclusion, given that they got the money from the Social Security award, they required him to apply for it, they got he was renewed for Social Security twice, and it was a central issue in his appeal. Their position is we can ignore this substantial evidence and not address it. They did not address it. That's an abuse of discretion. So reviewing it is not sufficient. Doctors who reviewed it have to say why they rejected it? No, the plan has to say why. The doctors are evaluating medical evidence. The plan has an affirmative obligation as a fiduciary to address the merits of the evidence before them. If a trial judge is given the 900-pound gorilla in the room and fails to address that, you reverse. They're acting in a quasi-judicial capacity. They should address all the evidence. The third issue I'd like to address, again, it's simply a policy issue, they're sitting here as judges, in effect. The third issue I'd like to address is the judicial estoppel issue. This case is more compelling basis for judicial estoppel than the Marilyn Monroe case. Before Barnett received benefits, he signed a repayment agreement. He knew that when he pursued Social Security benefits, he would be doing it for, in part, them. They recovered $175,000 over the course of nine years because he received Social Security benefits. In order to receive Social Security benefits, he had to establish he couldn't do his own job or any job in the national economy. They're gaming the system, to use Judge Fernandez's statement, by arguing now that he can work when they argued and they won for nine years. The concept of privity obviously has been adopted by the Marilyn Monroe case and in other courts. There is no rational basis for Edison to be allowed to come forward and argue in this case, after receiving benefits for nine years, based on requiring Barnett to pursue Social Security benefits, that he's capable of working. At a minimum, they should be required to show why there's a difference. But wasn't there new evidence? Didn't they hire investigators? Didn't they look into his conduct? Didn't they develop a record? The medical evidence is virtually identical. The medical evidence of the Social Security determination and the LTD determination is virtually identical and essentially indistinguishable. But the evidence is not the issue. The issue is in judicial estoppel. We presented an argument of A, B, and C, that, for example, that Barnett was incapable of doing any job in the national economy. On time, but I'm saying if there's new information that comes to their attention, aren't they allowed to consider that new information? But the new information didn't change anything. Barnett's Social Security determination was re-established. He was extended for Social Security in 2009. The medical evaluations that Social Security did and that the LTD claim did are virtually identical. I summarized them in my briefs. The issue is, they won. If they came forward and said, look, there is changed circumstances. They're not, we made a mistake. But they were allowed to prevail on the theory that Barnett's incapable of performing any job. And now, when it's advantageous to them, they flip 180 degrees if they had articulated a factual basis for doing so. New evidence, new facts, but there are new evidence. There is none. Yes, they did an investigation, but they didn't find anything. There's no difference. Their determinations are virtually identical medically to the determinations of the Social Security Administration. So those three points compel the conclusion that Barnett was denied, that the decision to terminate his benefits was an abuse of discretion. Okay. Thank you very much, counsel. We'll hear from the LTD. Good morning, Your Honors. May it please the Court, Keith Jacoby for the Edison plan. Let me just say preliminarily that the intensity of the scrutiny that this claims decision has undergone over the past six years is nothing short of extraordinary. My son is doing the Constitutional Rights Foundation mock trial program this week, and the beyond a reasonable doubt standard that he's working with would not appear to satisfy appellant's goals in this case. But we will dig one more time into the details. And let me start with San Onofre. You heard from appellant's counsel that there's no evidence in the record of the zone that the job. Okay. So what is that evidence? Okay. Well, the plan says that you have to be offered a job in the zone where you last worked. They called where he last worked, the San Onofre nuclear plant, and made that inquiry. So whichever zone that is, that's where he last worked. I can assure you that the San Onofre nuclear power plant has not moved. So there was an inquiry made in the plan by the administrator to the employer at the location where he worked. Now, it is correct that if you look at the record at pages 158 through 162, and we cited that in our supplemental brief, you will see an inquiry, is there a job available in your location? And a colloquy back that, well, the job doesn't have to be open in order to satisfy the terms of the plan. There is nothing in ERISA that says that every single solitary conversation, whether it be verbal or written, has to be documented. What we know by looking at what is documented is that the plan made an inquiry to the job location where he last worked, and then the plan issued a decision saying that a reasonable job was available, and a reasonable job is defined by the plan as a job that is in the zone where he last worked. There is no affirmative evidence that the four jobs initially and the two jobs ultimately when the supplemental evidence was produced are not available in the zone where he worked. Wait a minute. You said we're going to take the San Onofre area where he worked before as the zone, wherever it actually is. Wherever it is. So, the supervisor gets called, and the supervisor doesn't give an answer, is that right? Well, the evidence doesn't reflect an answer. The next answer in the chain. So, at that point, then what did SCE do to satisfy its obligations under the plan? Well, at that, first of all, again, we don't know if he was given an answer. We know that the next step in the conversation is a conversation about whether the job has to be open. That would imply that the job exists, but is not open. And the plaintiffs, the appellants argued vociferously in their brief that he actually has to be offered a job in order to be removed from disability. And I think that's important for a couple of reasons, because what the appellants have done in this case at every stage is to try to impose requirements on ERISA plans that simply don't exist. It is simply not a requirement, as I indicated a moment ago, for every single conversation to be diaried. This court and the district court is supposed to look at the entirety of the record. It is simply not a requirement that people remain on disability unless a job is open and available. That would mean that if an employer was suffering financial distress, they couldn't take anyone off of disability because there were no open jobs available. No, that's not what ERISA says. I didn't get into the function of what the plan says. The plan says that you have to be able to do the job. Nowhere in the plan does it say that we have to offer you the job. Again, what is the task of the appeals committee at Edison, of the district court, to review the record as a whole for substantial evidence? You would think, based on appellant's briefs, that we were siding with the one doctor against seven. But actually, the plan decision sides with the seven doctors versus one. Of course there's new evidence in the record. Dr. Schwartz, a surgeon, did an IME of Mr. Barnett. That's new. That wasn't available to the Social Security Administration. And of course, there is nothing in ERISA that suggests that ERISA plans need to keep people on disability until the United States Social Security Administration decides that they should be taken off. ERISA doesn't say that anywhere. And to suggest that it does is to suggest that ERISA's goals are somehow subordinated to the goals of the Social Security Administration. But do you agree that if there were no new evidence, if it was the virtually identical record, then there would be a stop-up? Because that's the argument that I had with your adversary. He says there is nothing new. It's the same record. You took one position and benefited from it. Now you're turning around and disowning it. So you say there is new evidence. That's fine. But if there isn't, then do you agree with your adversary that you'd be essentially stopped? No, I don't. I would not agree with that for the reasons. Even if it was the same record. Even if it was the same record. And I think that's because I don't think there is anything. The purpose of coordination of benefits in ERISA plans and disability plans generally is to prevent someone from unduly profiting by getting disability payments from multiple sources. But it's true that you urged him to apply and you benefited to the tune of $175,000 for nine years. If there were nothing new, you don't think there's some equitable estoppel here? No, I don't think there is, because I think that you argue there is new evidence, right? No. There's certainly the IME is new. I mean, the Social Security records are in the record for this Court to review. And the Social Security Administration is essentially looking at the treating physician's notes. And the treating physician, Dr. Davis, admittedly kept saying that Mr. Barnett could not work and that he could never work forever. Is there anything new other than the IME? Well, we have the opinions of, I guess the question is what constitutes new? When you look at a medical record that's hundreds of pages long and you give it to three neuro neurologists and three orthopedic surgeons and they apply their expertise to that. Some might people say that's not new, that's just more of the same. But we have seven doctors out of eight that say that looking at the objective medical evidence, the tests, the records, the medications, that he can do jobs in this limited capacity. And that is different from what his treating physician says. So the opinions are new? The opinions are certainly new. And the IME, which was a first person examination, is new. And the vocational assessment by Mr. Meyer is new. That is not, that was not part of the Social Security record as far as I'm aware. So that's another piece of evidence that is new. But even if nothing was new, I don't think that, again, coordination of benefits is to prevent moral hazard in applying for disability benefits. I don't think that requiring someone to apply for Social Security benefits if they have another disability policy to disclose that other disability policy and to make sure that someone doesn't make more money sitting on the sidelines than working, which isn't for the benefit of my client Edison, it's for the benefit of the plan and the participants in the plan to make sure that the money is there for them too. All of those reasons, that's why we have coordination of benefits. And the record looked at as the whole, again, abuse of discretion. Abuse of discretion. Substantial evidence looking the record as a whole. It's simply overwhelming. If you take a look at the pot shots that have been taken at this record, and I don't mean to use that pejoratively, but the runs that have been made trying to find a way to get Mr. Barnett back on disability, it's extraordinary. The appellant argued that there wasn't consideration given to the medications he was taking. Virtually every doctor talked about the medications he was taking and what impact that would have on his ability to work. There was the third argument your adversary raised that you should answer. He said there's nothing that shows that the reviewers explained, gave the rationale for disagreeing with the Social Security records, that they have to give a reason. So two of them mentioned having read it, but they don't explain. Nobody ever explains. Well, I think that the denial letters and the record as a whole give the context and the basis for why the benefits were denied. Did they explain why they reject the Social Security determination? I don't know if that's in the letter, and I'm not sure that that is required. Certainly if you look at the six doctors who reviewed this, they considered the opinion of the treating physician, which is basically the sole and exclusive basis for the Social Security administration's provision of benefits, and they say why other evidence is more compelling. And so I think that within the context of those six analyses, one of which was an 18-page single-space record review, I think there is that explanation. And Mr. Barnett and his attorneys have had access to this administrative record for years now. This is just a level of scrutiny and a level of a standard of review that is just simply found nowhere in ERISA. I think it's extraordinary that—I don't think that the plan took lightly that Mr. Barnett was disabled for a very, very long time, and I don't think that the plan took lightly that taking him off of disability benefits would have an impact. But I think three neurologists, three orthopedic specialists, board-certified folks, an in-person IME, a transferable skills analysis, and all they can come up with is, well, the administrative record doesn't have the job diary that shows the Edison jobs. Maybe it's a real diary. Maybe it was looking at somebody else's diary altogether. Why isn't that in the administrative record? I don't think administrative records were ever intended to be held to task in that fashion. This record is replete with evidence that Mr. Barnett isn't entitled to disability benefits, and I think the decision of the district court and the appeals committee should  Roberts. Thank you. Counsel, I don't think you have any more time, but we'll give you a minute for rebuttal. Thank you, Your Honor. First, on the question of the medical evidence, the consensus opinion of the doctors for Edison pretty much tracks the opinion of the Social Security Administration. I summarize it on page 20 of my opening brief. That's their consensus opinion. That's their opinion. It's just like the Social Security opinion. Second, on the issue of judicial estoppel, the question presented is, did they prevail? They did. With no, I mean, the circumstances are, they weren't making a mistake. Barnett was pursuing the claim in part on their behalf, and everybody knew it. How do you in good conscience say, go litigate a case and make these arguments, and now we're going to flip the other way? Third, on the question of the Social Security consideration, this court in Montour and in Saloma has unequivocally held, you have to address it. This is the 900-pound grill in the room. This is important evidence. If this were a district court decision that ignored the most important evidence in the record, you'd remand it. You'd say, go consider the evidence. Here, with court opinions clearly instructing them to address the Social Security Award, with the Social Security Award being front and center in Barnett's appeal, it's literally not mentioned. What they came up with later was. Your time is up. I know you're an eloquent guy who could go on a long time. Gone forever. Thank you, Your Honor. Thank you both for the argument. The case, Mr. Argytas submitted the case, and the court stands adjourned.
judges: Fernandez, M. Smith, Scheindlin